Filed 6/30/22  In re Mateo G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MATEO G. et al., Persons Coming Under the Juvenile Court Law. | B314871 (Los Angeles County  Super. Ct. No. 18CCJP06591) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MICHELLE B.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Martha Matthews, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Michelle B. (mother) appeals from the juvenile court's jurisdiction orders over her two children, Mateo G. and Dominic B., under Welfare and Institutions Code section 300, subdivision (b)(1).[1]  Mother's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Family and Children Services (DCFS) failed to adequately discharge their duties of initial inquiry within the meaning of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA).

We agree with mother that DCFS and the court failed to adequately discharge their duties of initial inquiry at the time mother filed her appeal.  After mother filed this appeal, however, DCFS and the court engaged in additional efforts to inquire into the children's possible Indian heritage.  Those efforts revealed information suggesting a reason to believe both children may be Indian children.  In light of those efforts and the court's subsequent order to make further inquiries into the children's Indian heritage, we agree with DCFS that the deficient efforts at initial inquiry are harmless.  We affirm the court's jurisdiction and disposition orders.

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother has an extensive dependency history for issues arising out of substance abuse and child neglect. Because the sole issue on appeal relates to ICWA compliance, we omit a summary of the facts leading to the court's jurisdiction over her children, Mateo G. (born July 2017) and Dominic B. (born Aug. 2018).

In a May 2021 detention report, DCFS reported that mother had denied having any Indian heritage. Both children were placed in the home of Mateo's paternal grandparents, Maria G. and Audie G. On May 26 and 27, 2019, mother and Mateo's father, Adam G., filed separate Parental Notification of Indian Status (ICWA-020) forms in which they indicated that they did not have any known Indian ancestry.

Present at the detention hearing were mother, maternal grandmother, Tina W., Adam G., and Maria G. Dominic's alleged father, Jose N., did not appear at the detention hearing. The court did not ask anyone present at the hearing whether Mateo or Dominic were Indian children. Instead, the court relied on the ICWA-020 forms submitted by mother and Adam G. to find "that the [ICWA] does not apply" as to Mateo.[2] The court also relied on mother's ICWA-020 form to find "no reason to believe that the [ICWA] applies" to Dominic, "but if and when [DCFS] is able to contact and interview that child's father or paternal relatives, [DCFS] is to make further inquiries."

---

[2]     In a minute order from the detention hearing, the court also indicated that it had "no reason to know" Mateo was an Indian child.

In a jurisdiction/disposition report, DCFS informed the court that in July 2021, mother and Adam G. denied having any known Indian heritage. Mother, Adam G., Maria G., and Tina W. attended the August 2021 jurisdiction/disposition hearing. The court did not discuss the ICWA during the hearing. Mother filed a notice of appeal from the jurisdiction and disposition orders as to Mateo and Dominic.

This court granted two requests by DCFS to take judicial notice of various documents filed in the juvenile court. Attached to the first request are two ICWA-020 forms that were filed in a prior dependency proceeding as to Dominic in 2018. In one ICWA-020 form, Jose N. indicated that he had no known Indian ancestry.

Attached to the second request for judicial notice are a status review report and minute orders that were filed in the juvenile court in this case. In a status review report, DCFS informed the court that in February 2022, mother, Jose N., and Mateo's "paternal grandparents" had all denied having any known Indian ancestry. In minute orders from a February 25, 2022 status review hearing, the court noted that it had "inquire[d of] the mother regarding any Native American heritage. The mother denies any such heritage. The Court inquires the maternal grandmother regarding any Native American heritage. The maternal grandmother denies any such heritage for herself but states that there may be Cherokee heritage on the maternal grandfather's side. The Court inquires [of Mateo's] paternal grandmother regarding any Native American heritage. [She] denies any such heritage." Thereafter, the court ordered DCFS to "[m]ake further inquiries as to Native American heritage and provide an update in the next report."

4

## DISCUSSION

1.   *ICWA and Harmless Error*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287 (*T.G.*), citing 25 U.S.C. § 1902; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8; *In re W.B.* (2012) 55 Cal.4th 30, 47.) "[P]ersistent noncompliance with ICWA led [our] Legislature in 2006 to 'incorporate[] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)  Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a)-(b).)

California law implementing ICWA imposes on the court and county welfare department "an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."  (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[3]  "Under ICWA as amended, the [child welfare department] and juvenile court have 'three distinct duties.' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)" (*In re Dezi C.* (June 14, 2022, B317935) __ Cal.App.5th __, __, 2022 WL 2128670 at p. *4 (*Dezi C.*).)

---

[3]   Unspecified references to rules are to the California Rules of Court.

5

The first duty is the initial duty of the court and child welfare department to inquire whether the child is an Indian child. (§ 224.2, subds. (a)-(c).) The child welfare department discharges its initial duty of inquiry by asking "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child [who has been placed in temporary custody] is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) The court must also "ask each participant present" at the "first appearance in court of each party" whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)

If the court or child welfare department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court or welfare department "shall make further inquiry" into the child's possible Indian status as soon as practicable. (§ 224.2, subd. (e); see rule 5.481(a)(4); *In re J.S.* (2021) 62 Cal.App.5th 678, 686; *T.G.*, *supra*, 58 Cal.App.5th at p. 290.) The duty of further inquiry obligates the welfare department to conduct interviews of the child's parents and extended family members to gather specific information, contact the Bureau of Indian Affairs, the state department of social services, and contact any relevant Indian tribes. (§§ 224.2, subds. (e)(2)(A)-(C), 224.3, subd. (a)(5); rule 5.481(a)(4); see *Dezi C.*, *supra*, at p. *4.)

6

If further inquiry results in a "reason to know the child is an Indian child," then the welfare department must provide formal notice to the parents, Indian custodian (if any), and the child's tribe with detailed information. (§ 224.3, subd. (a); accord, 25 C.F.R. §§ 23.11(a), 23.111(e).) We review a juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

"Where, as here, there is no doubt that [DCFS's] inquiry was erroneous . . . we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) If so, the error is harmless and we should affirm; otherwise, we must send it back for [DCFS] to conduct a more fulsome inquiry." (*Dezi C.*, *supra*, at p. *3.)

At present, courts of appeal have applied different standards of harmless error to defects occurring at the initial inquiry phase. Several courts have reversed for defective initial inquiries whenever there is an "absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry . . . requirements." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484 (*N.G.*); see, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 203, 206–207; *In re H.V.* (2022) 75 Cal.App.5th 433, 438, fn. 4.) Other courts have deemed any defect harmless unless the parent makes an offer of proof or other assertion of Indian heritage on appeal. (See, e.g., *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1070–1073 (*A.C.*); *In re Noreen G.* (2010) 181 Cal.App.4th

7

1359, 1389–1390; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431.) Yet other courts have treated deficient inquiry to be harmless unless, based on the appellate record, it is reasonably probable that missing information "likely to bear meaningfully upon whether the child is an Indian child" could reasonably be obtained by the welfare department (e.g., *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*)), or unless the record contains information "suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA" (*Dezi C.*, *supra*, at p. *4).

2.   *Analysis*

It is undisputed that DCFS and the trial court failed to discharge their respective duties of initial inquiry at the time mother filed this appeal. Mother, Adam G., Maria G., and Tina W. were not asked at the detention or jurisdiction/disposition hearings whether they knew or had reason to know that Mateo or Dominic were Indian children. (§ 224.2, subd. (c).) Mateo and Dominic's known extended family members (Maria G., Audie G., and Tina W.) and Jose N. were also not asked by DCFS whether Mateo or Dominic is or may be an Indian child, and where the children, parents, or Indian custodian(s) is domiciled. (§ 224.2, subd. (b).)

However, based on the evidence of which we have taken judicial notice, it is also undisputed that every person known to possess information regarding Mateo and Dominic's Indian heritage—mother, Adam G., Maria G., Audie G., Tina W., and Jose N.—have all been interviewed by DCFS. (See *In re A.B.* (2008) 164 Cal.App.4th 832, 839

8

[reviewing courts may judicially notice post-appeal juvenile court documents for ICWA compliance determinations].)

Through jurisdiction/disposition and status review reports, DCFS informed the court that during several interviews in July 2020 and February 2022, mother, Adam G., Jose N., and Mateo's "paternal grandparents" (i.e., Maria G. and Audie G.) all denied having any known Indian ancestry. Indeed, mother, Tina W., and Maria G. also informed the court during the February 2022 status review hearing that they did not have any Indian heritage. It was at that time that Tina W. indicated that an unnamed maternal grandfather (an extended family member of both Mateo and Dominic) may have Cherokee heritage. Based on this information, the court ordered DCFS to "make further inquiries" as to Mateo and Dominic's Indian heritage.

Thus, because the record and postjudgment evidence affirmatively demonstrate that additional inquiry by DCFS and the court revealed information suggesting a reason to believe Mateo and Dominic may be Indian children, any prior defects occurring at the initial duty of inquiry stage during the detention and jurisdiction/disposition hearings was harmless under any standard of prejudice. (See *N.G.*, *supra*, 27 Cal.App.5th at p. 484; *A.C.*, *supra*, 65 Cal.App.5th at pp. 1070–1073; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; *Dezi C.*, *supra*, at p. *4.) Of paramount consideration in any dependency proceeding is that such actions "be resolved expeditiously. [Citations.] That goal would be thwarted if the proceeding had to be redone without any showing the new proceeding would have a different outcome." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 625.) That DCFS was ordered to conduct further

9

inquiry into the children's Indian heritage means that any remand by this court for compliance with the duty of initial inquiry would produce no different outcome in the case.  We therefore conclude that the prior errors of initial inquiry occurring before or during the detention and jurisdiction/disposition hearing were harmless.

## DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.